IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CLIFFORD W. BAKER,<br><br>  Plaintiff,<br><br>v.<br><br>JOHN DOE NURSE PRACTITIONER,<br>CHRISTINE BROWN,<br>CRYSTAL CROW, A. DESAI,<br>DR. PERCY MYERS, and<br>WEXFORD HEALTH SOURCES, INC.,<br><br>  Defendants. | Case No. 23-cv-1739-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

  Plaintiff Clifford W. Baker, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. His original Complaint alleging deliberate indifference in the treatment of his broken finger was dismissed for failure to state a claim (Docs. 1, 11). Baker was granted leave to amend his pleading. On September 19, 2023, he filed his Amended Complaint (Doc. 12). Baker alleges the defendants acted with deliberate indifference in treating his broken finger, in violation of the Eighth Amendment.

  This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a).

1

Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Amended Complaint

In his Amended Complaint, Baker makes the following allegations: On February 9, 2023, while playing basketball in the Pinckneyville gym, Baker broke his finger. (Doc. 12, pp. 3, 23). He was immediately sent to the healthcare unit. At approximately 9:10 a.m., he was evaluated by two nurses. They informed Baker that Dr. Myers would arrive at the prison at 10:00 a.m., and he would have to wait for Dr. Myers to evaluate the injury (*Id.* at p. 3). At 10:50 a.m., Dr. Myers examined Baker's finger, noted that it was possibly fractured, and ordered Baker's transfer to the emergency room for further treatment (*Id.*). Baker informed Dr. Myers that he was in pain and was experiencing numbness from the swelling. Dr. Myers sent Baker back to his cell until staff were available for transport (*Id.*).

At 6:30 p.m., Baker was transported to the Pinckneyville Community Hospital Emergency Room where he received an x-ray and an examination by an emergency room doctor (*Id.* at pp. 3, 23-29). The doctor informed Baker that his finger was broken in two locations and stated that he would need to be seen by an orthopedic doctor within 24 hours (*Id.*). The doctor noted that he may need surgery to repair the ligaments (*Id.*). Baker was fitted with a plaster wrap and directed not to take the wrap off until he saw the orthopedist (*Id.*).

Baker returned to Pinckneyville and was prescribed Ibuprofen for his injury (*Id.*). He suffered from extreme pain but was not sent out to the orthopedist as previously directed by the emergency room doctor (*Id.*). On February 10, 2023, Baker submitted an emergency grievance. On February 14, 2023, Warden Mitchell deemed the grievance an emergency, but the grievance officer and the Administrative Review Board ("ARB") ultimately denied the grievance (*Id.*). The medical records indicate that on February 10, 2023, Dr. Myers placed a referral for an orthopedic evaluation (*Id.* at p. 36). He marked that it was not urgent (*Id.*).

After submitting the grievance, Baker tried to obtain medical care for his finger. On February 11, 2023, he spoke to a correctional officer and noted that his hand was painful and throbbing. He also noted that he was unable to shower with the wrap on his hand (*Id.* at p. 4). On February 12, 2023, he stopped a nurse and informed her of his pain. On February 14, 2023, he asked for a crisis team in order to obtain care, but his request was denied.

On February 15, 2023, Baker finally saw John Doe Nurse Practitioner about his injury (*Id.* at p. 4). The nurse practitioner informed Baker that he was scheduled to see an orthopedic surgeon and that he should refrain from removing the wrap or showering prior to the appointment (*Id.*). Baker complained of pain and numbness and the John Doe Nurse Practitioner provided him with Tylenol (*Id.*).

On March 22, 2023, Baker wrote to Healthcare Unit Administrator Christine Brown and inquired as to why he had not yet been seen by an orthopedist (*Id.* at p. 4). He informed her that his finger was still throbbing, and he was unable to shower with the

3

wrap. Baker notes that Brown is in charge of overseeing orders for referrals to outside specialists, yet she failed to schedule an appointment with the orthopedist (*Id*. at p. 5). On April 6, 2023, Baker spoke with Warden Crystal Crow about his broken finger. He informed her of the pain and numbness in his finger (*Id*.). Crow informed Baker that she would look into the issue, but he still did not receive care (*Id*.).

On April 12, 2023, Baker saw Physician Assistant A. Desai (*Id*. at p. 5). Desai told Baker that he should have been sent out immediately and that she did not know what caused the delay (*Id*.). She informed him that he would likely suffer permanent damage due to the delay but that she would submit another request for referral to an orthopedist (*Id*.). Baker informed Desai of the continued pain and numbness, as well as his inability to properly bend the finger or put pressure on the digit (*Id*.). Baker alleges that Desai displayed deliberate indifference because she failed to immediately send him out to be seen by an orthopedist despite his clear signs of distress and discomfort (*Id*. at p. 6).

On April 26, 2023, Baker finally saw an orthopedist in St. Louis, Missouri (*Id*.). He was prescribed physical therapy to exercise the ligaments and tendons. The doctor noted that Baker was unable to fully flex the finger (*Id*.).

Baker alleges that all of the defendants failed to obtain immediate care for his injury despite knowing that the emergency room doctor previously instructed Baker to be seen the day after his injury. He alleges that Dr. Myers failed to see him after his return from the emergency room and failed to ensure that he was sent to the orthopedist the following day (*Id*. at p. 6). He further alleges that Wexford Health Sources, Inc. is liable because it employed the staff that failed to follow the emergency room doctor's orders

for an immediate referral to an orthopedist (*Id.*). He also alleges Wexford failed to alleviate Baker's pain and failed to provide timely care (*Id.*). Baker notes that he is unsure whether delays were caused by understaffing or due to the deliberate indifference of staff at Pinckneyville.

## Discussion

Based on the allegations in the Amended Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** Eighth Amendment deliberate indifference claim against John Doe Nurse Practitioner, Christine Brown, Crystal Crow, A. Desai, and Dr. Percy Myers for delaying treatment for Baker's broken finger.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for delaying treatment for Baker's broken finger.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Baker states a claim in Count 1 for deliberate indifference as to Christine Brown, Crystal Crow, and Dr. Myers. Baker alleges that he spoke to Crow and wrote a letter to Brown requesting care for his injured finger and they failed to respond

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

5

to his requests. That is enough to state a claim at this stage. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment). As to Dr. Myers, Baker alleges that he was directed to follow-up with Dr. Myers after his visit to the emergency room, but that Dr. Myers failed to examine him after his return. He further points to medical records from the emergency room directing that Baker be seen by an orthopedist the following day (Doc. 1, p. 30). Although Dr. Myers placed a referral for an evaluation, he failed to mark it as urgent. Baker was not seen by an orthopedist until April 2023. That is enough at this stage to state a deliberate indifference claim against Dr. Myers for the delay in referring Baker to an orthopedist.

 Baker fails, however, to state a claim against A. Desai and the John Doe Nurse Practitioner. He alleges that he saw each provider for treatment and alleges that they failed to refer him to an orthopedist in a timely manner. But his allegations demonstrate that each medical professional provided him with care. Baker alleges that the John Doe Nurse Practitioner should have ensured that Baker was seen by an orthopedist the day after his injury (*Id*. at p. 4). But the allegations indicate that the nurse practitioner noted that Baker was already scheduled to be seen by an orthopedist. He also provided Baker with pain medication. Because the allegations suggest that Baker was already scheduled with the orthopedist at the time the nurse practitioner examined him, the allegations do not suggest deliberate indifference on the part of the nurse practitioner. He treated Baker and provided him with pain medication. As to A. Desai, she examined Baker on April 12, 2023, and indicated that she would submit another referral for an orthopedic evaluation

(Doc. 12, p. 5). Baker was subsequently scheduled and seen by an orthopedist on April 26, 2023. These allegations do not suggest that Desai acted with deliberate indifference. Thus, Count 1 is **DISMISSED without prejudice** as to A. Desai and the John Doe Nurse Practitioner.

Baker also fails to state a claim against Wexford Health Sources, Inc. He alleges that Wexford had knowledge of his need for urgent care and failed to take steps to ensure that he was referred to the orthopedist as ordered by the emergency room doctor. He also alleges that Wexford is liable because it employed the prison doctors who treated him. But Wexford cannot be liable for the actions of its employees because *respondeat superior*, or supervisor, liability does not apply to Section 1983 actions. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Wexford can only be liable if its policies and practices led to the delay in Baker's treatment. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation). Baker fails to point to any such policy. He notes that delays might have been due to understaffing but he fails to allege that Wexford had a policy related to the staffing at the prison. Without something more, Baker fails to state a claim against Wexford. Thus, Count 2 against Wexford is **DISMISSED without prejudice**.

## Disposition

For the reasons stated above, Count 1 shall proceed against Dr. Percy Myers, Christine Brown, and Crystal Crow. The claims against A. Desai, John Doe Nurse Practitioner, and Wexford Health Sources, Inc. are **DISMISSED without prejudice**.

7

The Clerk of Court shall prepare for Defendants Dr. Percy Myers, Christine Brown, and Crystal Crow: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Baker. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Baker, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Baker, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless

of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Baker is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  February 15, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**