UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CLFFORD W. BAKER,<br><br>    Plaintiff,<br><br>vs.<br><br>PERCY MYERS,<br>CHRISTINE BROWN,<br>and<br>CHRISTEL CROW,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 3:23-cv-01739-GCS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Plaintiff Clifford Baker, an inmate with the Illinois Department of Corrections ("IDOC"), who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. His original Complaint alleging deliberate indifference in the treatment of his broken finger was dismissed for failure to state a claim. (Doc. 11). Plaintiff was granted leave to amend his pleading. On September 19, 2023, Plaintiff filed his Amended Complaint. (Doc. 12). Baker alleges that defendants acted with deliberate indifference in treating his broken finger, in violation of the Eighth Amendment.

On February 15, 2024, the Court, pursuant to 28 U.S.C. § 1915A, conducted a review of the Amended Complaint and allowed Plaintiff to proceed on an Eighth Amendment deliberate indifference claim against Christine Brown, Christel Crow, and Percy Myers for delaying treatment for his broken finger. (Doc. 13). As to his allegations regarding Defendants Brown and Crow, Plaintiff alleges that he spoke to Defendant Crow on April 6, 2023, and he wrote a letter to Defendant Brown on March 22, 2023, requesting care for his injured finger; they both failed to respond to his requests. (Doc. 12, p. 4). As to his allegations regarding Defendant Myers, Plaintiff alleges, *inter alia*, that he was directed to follow-up with Defendant Myers after his February 9, 2023, visit to the emergency room, but Defendant Myers failed to examine him after his return.

Pending before the Court is a motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Brown and Crow. (Doc. 39). Defendants argue that Plaintiff failed to exhaust his administrative remedies because he failed to pursue his allegations against them through the prison's grievance process prior to filing this lawsuit.[1] Plaintiff filed an opposition to the motion. (Doc. 45). As the motion is ripe, the Court turns to address the merits of the motion.

## FACTS

The parties agree that grievance # 451-02-23 is the relevant grievance to the

---

[1] On April 9, 2024, the Court granted Defendant Myers's motion to withdraw the affirmative defense of exhaustion of administrative remedies. (Doc. 37).

issues in this case.[2]

On February 10, 2023, Plaintiff filed emergency grievance # 451-02-23, concerning the allegations relating to medical treatment. (Doc. 39-2, p. 3; Doc. 45, p. 6). Plaintiff states that he injured his hand the morning of February 9, 2023, while playing basketball, and nurses and a doctor at the facility provided him with inadequate treatment immediately following his injury. Plaintiff requested the following relief: "[t]o have camera footage preserved in all areas mentioned in body of grievance gym/HCU at time mentioned; to be seen immediately by the orthopedic doctor as ordered by PNK ER Staff. To have finger fixed immediately. To alleviate pain. To be compensated both monetary and compensatory damages." *Id*. Plaintiff did not name Defendants Brown and Crow.

On February 14, 2023, the Chief Administrative Officer ("CAO") expedited the emergency grievance. The grievance officer's report dated February 21, 2023, notes that: "PER HCUA: Individual in custody is scheduled to see ortho." (Doc. 39-2, p. 1, 2; Doc. 45, p. 4). The grievance officer recommended that the grievance be denied. The next day, the CAO concurred with the grievance officer's decision. (Doc. 39-2, p. 1; Doc. 45, p. 4). On April 19, 2023, Debbie Knauer of the Administrative Review Board ("ARB") denied the grievance finding that the issue was appropriately addressed by the facility. (Doc. 39-2, p. 8; Doc. 45, p. 8). Latoya Hughes, Acting Director, concurred with this

---

[2]     The record reflects that Plaintiff, during his incarceration, filed many grievances through the prison's grievance process.

finding. *Id*.

Plaintiff filed suit on May 24, 2023. (Doc. 1). He filed his Amended Complaint on September 19, 2023. (Doc. 12).

## LEGAL STANDARDS

"Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g.*, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion."). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*.

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v.*

*McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the

district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE §

504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint[,] or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be

handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## DISCUSSION

Because there are no disputes of material facts, the Court finds it unnecessary to hold an evidentiary hearing pursuant to *Pavey*.

Defendants maintain that Plaintiff's grievance dated February 10, 2023, does not specifically reference any action or inaction by them or that Defendants knew of, and disregarded Plaintiff's need for healthcare to treat his finger. Further, Defendants maintain that the allegations in the Amended Complaint against them stem from separate conduct and circumstances occurring *after* the grievance was filed. Thus, Plaintiff failed to exhaust his administrative remedies against them. Plaintiff counters that his grievance was pending with the ARB when he made Defendants aware of his

issue, and he believes the grievance dated February 10, 2023, was sufficient to meet the exhaustion requirement.

Exhaustion of administrative remedies is an affirmative defense in an action against prison officials, and the burden of proof is on the officials. Here, the undersigned finds that Defendants have not met their burden and that Plaintiff did exhaust his administrative remedies. The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names are not known, an inmate, must at the very least, "include as much descriptive information about the individual as possible." 20 ILL. ADMIN CODE § 504.810(a)(b). *See also Ambrose v. Godinez*, No. 11-3068, 510 Fed. Appx. 470, 472 (7th Cir. Feb. 22, 2013); *but see Jackson v. Shepherd*, No. 13-2651, 552 Fed. Appx. 591, 593 n.1 (7th Cir. Feb. 6, 2014). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). This fits with the purpose of the PLRA's exhaustion requirement, which was designed to afford correctional officials a chance to address inmate complaints internally, prior to resorting to federal litigation. *See, e.g.*, *Kaba*, 458 F.3d at 684 (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). Indeed, the Seventh Circuit has consistently reminded district courts that "all the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought[.]" *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (citing

*Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). An inmate is not required to provide personal notice of suit to an individual defendant through his grievance. *See Maddox*, 655 F.3d at 722 (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

Here, the undersigned finds that Plaintiff through the above grievance provided enough information to put the prison officials on notice of the nature of his claim against Defendants Brown and Crow. While Defendants are not specifically named, Plaintiff alleges that Defendant Brown was the Healthcare Unit Administrator and Defendant Crow was the Warden during the relevant period. Thus, the possibility exists that Defendants Brown and Crow had knowledge of the lack of medical treatment and contributed to the delay in medical treatment. The simple fact that Plaintiff mentions he was receiving no treatment is sufficient to satisfy the purpose of exhaustion, which is to put the jail on notice of problems within the facility to allow the jail the opportunity to address the problem before a lawsuit is filed. Moreover, the HCU was mentioned in Plaintiff's grievance as well as by the grievance officer in her report, thus indicating Defendant Brown's potential responsibility and involvement for the lack of treatment. Furthermore, Defendant Crow, as CAO, was involved in the grievance process when she deemed Plaintiff's grievance emergent, thus placing her on notice of Plaintiff's issue. *See, e.g.*, *Maddox*, 655 F.3d at 722 ("[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action.").

In this instance, the Court agrees with Plaintiff that he was not required to file multiple, successive grievances regarding the same issues. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). In *Turley*, the Seventh Circuit found that the inmate's grievance "centered around continuing prison policies, including allegedly illegal lockdowns, and one occurrence of notice from [the prisoner] was sufficient to give the prison a chance to correct the problems." *Id*. But the Seventh Circuit noted that an inmate is required to file a separate grievance "if the underlying facts or the complaints are different." *Id*. For instance, in *Bowers v. Dart*, 1 F.4th 513 (7th Cir. 2021), the Seventh Circuit found that a grievance complaining about officers' failure to respond *during* an attack did not serve to exhaust the claim that officers failed to protect the plaintiff *before* the attack. The Seventh Circuit noted that claims in the grievance were "substantively distinct from the allegations in [the plaintiff's] federal complaint." *Id*. at 517. More recently, the Seventh Circuit found that a grievance about the lack of water in an observation cell did not serve to exhaust claims about other issues with the same cell, including the presence of feces and chemical agents, because those claims were substantively distinct from the claims in the grievance. *See Jackson v. Esser*, 105 F.4th 948, 959-961 (7th Cir 2024).

While Plaintiff's specific allegations against these Defendants occurred after he filed the grievance, these allegations are like the ones contained in the grievance in that Plaintiff complains he was delayed medical treatment for his broken finger. Coupled

with the fact that the CAO found Plaintiff's grievance to be emergent, that Plaintiff referenced the HCU in the grievance, and that the grievance officer in her report noted a response from the HCU, the Court finds that Plaintiff was not required to file an additional grievance as to these two Defendants. Construing the evidence in the light most favorable to Plaintiff, the Court finds that Defendants have not carried their burden regarding exhaustion and that Plaintiff exhausted his administrative remedies as to his claim against Defendants Brown and Crow.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion for summary judgment on the issue of exhaustion (Doc. 39).

**IT IS SO ORDERED.**

**DATED: December 4, 2024.**

Gilbert C Sison
Digitally signed by Gilbert C Sison
Date: 2024.12.04 13:16:08 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**