**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CLIFFORD BAKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-01739-GCS** |
| | ) | |
| **PERCY MYERS,** | ) | |
| **CHRISTINE BROWN,** | ) | |
| **and** | ) | |
| **CHRISTEL CROW,** | ) | |
| | ) | |
| **Defendants.** | | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

INTRODUCTION AND BACKGROUND

Pending before the Court are Defendant Percy Myer's motion for summary judgment, (Doc. 71, 72, 89), and Defendants Christel Crow's and Christine Brown's motion for summary judgment. (Doc. 80, 88).[1] Plaintiff opposes the motions. (Doc. 87). Based on the reasons delineated below, the Court **GRANTS** the motions for summary judgment.

Plaintiff Clifford Baker, an inmate with the Illinois Department of Corrections ("IDOC"), who is currently incarcerated in Danville Correctional Center, brings this

[1] Along with the motions for summary judgment, Defendants filed the required Federal Rule of Civil Procedure 56 notices informing Plaintiff of the consequences of failing to respond to the motions for summary judgment and what is required in responding to motions for summary judgment. (Doc. 73, 81).

action under 42 U.S.C. § 1983 for deprivations of his civil rights while housed at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 1). His original Complaint alleging deliberate indifference in the treatment of his broken finger was dismissed for failure to state a claim. (Doc. 11). Plaintiff was granted leave to amend his pleading. On September 19, 2023, Plaintiff filed his Amended Complaint. (Doc. 12). Baker alleges Defendants acted with deliberate indifference in treating his broken finger, in violation of the Eighth Amendment.

On February 15, 2024, the Court, pursuant to 28 U.S.C. § 1915A, conducted a review of the Amended Complaint and allowed Plaintiff to proceed on an Eighth Amendment deliberate indifference claim against Christine Brown, Christel Crow, and Percy Myers for delaying treatment for his broken finger. (Doc. 13). As to his allegations regarding Defendants Brown and Crow, Plaintiff alleges he spoke to Defendant Crow on April 6, 2023, and he wrote a letter to Defendant Brown on March 22, 2023, requesting care for his injured finger; they both failed to respond to his requests. (Doc. 12, p. 4). As to his allegations regarding Defendant Myers, Plaintiff alleges, *inter alia*, that he was directed to follow-up with Defendant Myers after his February 9, 2023, visit to the emergency room, but Defendant Myers failed to examine him after his return.

Defendant Myers maintains he is entitled to summary judgment as Plaintiff cannot set forth any evidence he was deliberately indifferent to Plaintiff's serious medical needs. Nor did Plaintiff suffer any injury caused by him. Likewise, Defendants Brown and Crow argue the same. They further argue they are entitled to qualified immunity. Plaintiff counters that the evidence shows Defendants Myers and Brown were deliberately

indifferent to his serious medical needs. Plaintiff also asserts he suffered unnecessary and wanton infliction of pain and suffering due to Defendants' conduct. Based on the reasons delineated below, the Court grants the motions for summary judgment.

## UNDISPUTED FACTS[2]

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

At all relevant times, Plaintiff Clifford Baker was incarcerated at Pinckneyville. Defendant Percy Myers is a physician licensed in the state of Illinois. At all relevant times, Defendant Myers worked as a physician at Pinckneyville. Defendant Christine Brown is employed as the Healthcare Unit Administrator ("HCUA") at Pinckneyville. She is also a registered nurse, but does not treat patients in her current role as HCUA. At all relevant times, Defendant Christel Crow was employed as the Warden at Pinckneyville.

---

[2] These are the facts agreed to by the parties and/or are supported by the record. The Court notes that in response to Defendants' motions for summary judgment, Plaintiff did not address/mention any of Defendant Crow's and Defendant Brown's assertions of material facts in violation of Local Rule 56(b)(1). This is despite the fact that Defendants provided Plaintiff with the required notices of the consequences for failing to respond. (Doc. 81). Local Rule 56.(1)(g) also provides: "[a]ll material facts set forth in a Statement of Material Facts or a Statement of Additional Material Facts shall be deemed admitted for the purposes of summary judgment unless specifically disputed." SDIL-LR 56.1(g). Further, the Local Rule 56(j) states in part: "[t]his Local Rule applies equally to represented and *pro se* parties. . . ." Thus, the opposing party must respond to the movant's statement of facts. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). As Plaintiff did not respond/dispute Defendant Crow's and Defendant Brown's material facts, the Court deems them admitted for the purposes of this motion for summary judgment.

On February 9, 2023, Plaintiff injured the index finger on his left hand playing basketball. He jammed it on the ball, and it "popped" and swelled so he was taken to healthcare. Plaintiff was seen by Dr. Myers and transported to the Pinckneyville emergency room that same day. Plaintiff was seen by Dr Walter Beusse. Dr. Beusse charted, on physical examination, that Plaintiff was positive for second digit metacarpophalangeal joint (middle joint of fingers) swelling, ecchymosis (bruising), and limited range of motion. There was moderate digit tenderness. Plaintiff received x-rays and was diagnosed with a broken finger (nondisplaced volar plate fracture of the index middle finger phalanx and fracture involving the base of the index finger when counting from the hand) and was told the hospital recommended an orthopedic surgeon. A hospital nurse wrapped Plaintiff's finger in an Ace bandage and a splint. He was prescribed ibuprofen 600 mg. Plaintiff already had a prescription for Naproxen on file at the prison. The discharge instructions from the emergency room included Plaintiff following-up with Defendant Myers and calling Southern Illinois Orthopedic Center ("SIOC") at 8:00 a.m. the following morning for an appointment.

Plaintiff returned to the prison around 11:00 p.m., wherein he was seen by a nurse in the health care unit. Plaintiff does not know if Defendant Myers was at the prison at this time.

Plaintiff agreed with Defendant Myer's decision to send him to the emergency room. The first and only time Plaintiff saw Defendant Myers for an injury to his finger was on February 9, 2023.

On February 10, 2023, Defendant Myers completed a Medical Special Services Referral and Report for Plaintiff to be referred to orthopedics for evaluation for a nondisplaced fracture of his left index finger. Defendant Myers marked the referral non-urgent.

Plaintiff does not know what the process is to get referred out for an off-site visit. He does not know what involvement Defendant Myers had in that process, but in his case, Defendant Myers marked it non-urgent. Plaintiff does not know what happens after Defendant Myers completes a referral request. He also does not know how his appointment was scheduled.

On February 10, 2023, Plaintiff submitted an emergency grievance about his finger. Plaintiff does not know if Defendant Myers ever reviewed his grievance or if anyone ever spoke to him about the grievance.

Between February 10, 2023, and February 15, 2023, Plaintiff did not see anyone in the healthcare unit about his finger. He testified that during this time, if he saw nurses passing out medication, he would tell them about his situation. However, Plaintiff does not know what the nurses would do with this information; he does not know if any of the nurses ever spoke to Defendant Myers; and he does not know if Defendant Myers was ever made aware of these conversations.

Also, during this time, Plaintiff had correctional officers, including correctional officer Martin, call the health care unit. Plaintiff testified that officer Martin spoke with Defendant Brown. However, he is not sure what Defendant Brown did with this information. He also does not know if Defendant Brown spoke with Defendant Myers;

he does not know if officer Martin talked to anyone other than Defendant Brown; and he does not know if Defendant Myers was made aware of his conversations with correctional officers about his finger.

On or about February 15, 2023, Plaintiff was authorized to see an orthopedist for evaluation of a nondisplaced fracture of his left finger. That same day, he saw Nurse Practitioner Bobby Blum for follow-up. Plaintiff does not know who scheduled him to see NP Blum. NP Blum charted that Plaintiff had an ACE wrap. NP Blum's plan was for Plaintiff to be seen by orthopedics, continue the splint, and acetaminophen 500 mg for 30 days.

Plaintiff testified that NP Blum told him he was on the list to see the orthopedics; that he had no reason to doubt NP Blum; and that he does not know if NP Blum ever spoke with Defendant Myers about him.

On February 24, 2023, Defendant Myers charted that Plaintiff was on his line for the emergency room visit follow-up but noted Plaintiff had been seen in the health care unit after the emergency room visit. So Defendant Myers' plan was to cancel Plaintiff's visit with him. At this time, Plaintiff did not know he was scheduled to see Defendant Myers, and he does not know why Defendant Myers canceled the visit.

On March 16, 2023, NP Blum charted an order for acetaminophen 500 mg for 30 days.

On March 22, 2023, Plaintiff wrote Defendant Brown about his finger. He does not know what Defendant Brown did with his note or if she ever spoke to Defendant Myers

about it. He does not know if Defendant Myers was ever aware of any prisoner request or sick call request Plaintiff submitted related to his finger.

NP Blum charted an order for naproxen 375 mg for 30 days on March 30, 2023.

On April 6, 2023, Plaintiff talked to Warden Crow about his finger. He does not know what Defendant Crow did with this information or if she ever talked to Defendant Myers.

Plaintiff was seen in nurse sick call for discomfort to his left index finger and lower back on April 10, 2023. The nurse referred Plaintiff for chart review of his pain medications, and to a physician or mid-level provider for his left index finger. The nurse also gave Plaintiff Tylenol 325 mg. Two days later, on April 12, 2023, Plaintiff saw Physician Assistant Ashini Desai for his left hand. Plaintiff also complained of back pain with history of degenerative disk disease. NP Desai charted that Plaintiff had swelling and decreased flexion at the metacarpophalangeal joint and proximal interphalangeal joint. Her assessment was left hand second digit injury and degenerative disk disease. She charted that orthopedics was pending. Her plan was for Plaintiff to have naproxen 500 mg and acetaminophen 500 mg for 6 months and for Plaintiff to be seen in nurse sick call as needed.

Plaintiff does not know if PA Desai ever talked to Defendant Myers about him. Plaintiff was told by Nurse Practitioner Ashini Desai that the appointment was set by Defendant Brown.

On April 26, 2023, Plaintiff saw Dr. Ryan Patrick Calfee at Wahington University Orthopedic Surgery ("Wash U") for left index finger injury. Dr Calfee charted, on

physical examination, that there was no evidence of finger malrotation or scissoring; that Plaintiff had full extension of all fingers, fingertip-to-distal palmar crease was 2 cm for the index finger and 0 for all other fingers, and sensation was intact; that Plaintiff had some tenderness to palpation over the volar aspect of the proximal interphalangeal joint of the index finger; and that Plaintiff's hand was warm and well perfused. Dr. Calfee ordered, performed, and interpreted a fluoroscan of Plaintiff's index finger, which showed only a small avulsion fracture on the volar base of the middle phalanx of the index finger. Dr. Calfee's assessment was left index finger volar plate injury with avulsion fracture at the base of the middle phalanx with residual stiffness. Dr. Calfee noted Plaintiff's finger alignment was very encouraging. He showed Plaintiff exercises he could do at home to help the remaining flexion of his index finger using active and passive stretching. He also noted he told Plaintiff that the finger can continue to ache for quite a number of months but overall, everything was stable. In his Report of Referral, Dr. Calfee noted findings of "left index finger small fracture healed, just some stiffness." His assessment was "left index finger stiff after injury." Dr. Calfee's plan was "stretching active [and] passive with good full flexion, Tylenol or NSADs [as needed] for discomfort, and no follow-up needed."

Plaintiff does not know why it took until April 26, 2023, to see Dr. Calfee. He contends it is because Defendant Myers marked non-urgent on the referral form. He does not know Wash U's patient schedule in February, March, and April, and he does not know if Wash U had any earlier openings in February, March or April. Plaintiff does not know if SIOC could have seen him sooner.

Plaintiff saw NP Blum after he returned from Dr. Calfee on April 26, 2023. NP Blum discussed Dr. Calfee's plan with Plaintiff.

Defendant Brown declared she does not schedule any outside appointments; such appointments are made by facility schedulers. Defendant Brown believes she was contacted regarding Plaintiff's February 10, 2023 grievance. In response, Defendant Brown would have reached out to the schedulers, who informed her that Plaintiff was scheduled to see the orthopedist, and she relayed that information to the grievance officer.

Plaintiff has no medical training. He does not know what the treatment is for his finger injury. He does not know how long it takes for this type of injury to heal. He does not know how long someone with this type of injury can still experience symptoms. He does not know if it is unusual to have stiffness after three to four months.

Plaintiff still cannot fully make a fist, and his finger will not bend fully.

## LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The

Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Fletcher v. Doig,* 145 F.4th 756, 764 (7th Cir. 2025) (citing *Anderson*, 477 U.S. at 255). *See also Bishop v. Air Line Pilots Association International,* 5 F.4th 684, 693 (7th Cir. 2021) (stating that "we are not required to draw every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Smith v. City of Janesville,* 40 F.4th 816, 821 (7th Cir. 2022); *Doxtator v. O'Brien,* 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago School of Professional Psychology,* 893 F.3d 1001, 1006 (7th Cir. 2018) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of

a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]”). Instead, the non-moving party must present “definite, competent evidence to rebut the [summary judgment] motion.” *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (internal citation omitted).

**B. Deliberate Indifference**

The Eighth Amendment prohibits cruel and unusual punishments, and the deliberate indifference to the “serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.” *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457-458 (7th Cir. 2020) (citations omitted). A prisoner is entitled to “reasonable measures to meet a substantial risk of serious harm”—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner’s dissatisfaction with a medical professional’s prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so “blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner’s condition.” *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted).

To prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (citations omitted). The first consideration is whether the prisoner has an “objectively serious medical condition.” *Johnson*, 5 F.4th at 824. *Accord Whitaker v. Dempsey*, 144 F.4th 908, 916 (7th Cir. 2025) (citations omitted). “A medical condition is objectively serious if a physician has

diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1022-23 (7th Cir. 2019) (citations omitted). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm") (internal quotation marks omitted).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Johnson*, 5 F.4th at 824. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (citations omitted). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Lockett*, 937 F.3d at 1023. *See also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) (stating that "isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot

be deliberate indifference." *Eagan v. Dempsey*, 987 F.3d 667, 688 (7th Cir. 2021) (citations omitted). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did[.]" *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (citations omitted). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment where the treatment is known to be ineffective but is chosen anyway. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Non-medical prison staff, meanwhile, are generally "entitled to relegate to the prison's medical staff the provision of good medical care[.]" *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Thus, non-medical prison staff may be held liable under § 1983 only if they have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). The relevant inquiry turns on the prison official's subjective state of mind. *See Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc).

**DISCUSSION**

**A. Defendant Myers**

Defendant Myers argues he is entitled to summary judgment as Plaintiff cannot establish that he exhibited deliberate indifference to his serious medical needs. Plaintiff counters that Defendant Myers was deliberately indifferent because Defendant Myers did not cause him to be seen by an orthopedist on February 10, 2023, that Defendant Myers marked his referral to an outside orthopedist as non-urgent, and that Defendant Myers did not see Plaintiff on February 10, 2023. The Court agrees with Defendant Myers.

For the purposes of this motion, the Court finds that the injury to Plaintiff's broken finger is a serious medical condition. However, based on that same record and construing the evidence in the light most favorable to Plaintiff, the Court finds there is no evidence in the record to show that Defendant Myers was deliberately indifferent to Plaintiff's serious medical need regarding the treatment of Plaintiff's finger and the delay in treatment Plaintiff experienced.

Here, the record reveals Defendant Myers provided appropriate medical treatment to Plaintiff. He saw Plaintiff only *once* on February 9, 2023. During that visit, Defendant Myers examined Plaintiff's finger and immediately sent Plaintiff to the emergency room. Plaintiff was transported to the emergency room that day and returned to the prison around 11:00 p.m. that night. The next day, February 10, 2023, Defendant Myers reviewed Plaintiff's discharge instructions from the emergency room doctor and submitted a non-urgent referral for Plaintiff to be sent to an outside orthopedist. The emergency room doctor did not recommend urgent surgery. Defendant Myers attested

he did not have a role in the scheduling of the orthopedist; he did not have knowledge of the appointment delay; and he did not have any further contact with Plaintiff.

There is nothing to suggest that the treatment Plaintiff received from Defendant Myers was "so blatantly inappropriate as to evidence intentional mistreatment." *Greeno v. Daly*, 414 F.3d 645, 654 (7th Cir. 2005) (citation omitted). Moreover, Plaintiff has offered no evidence to support his assertions that Defendant Myers personally should have called the orthopedist for him on February 10, 2023; that Defendant Myers should have seen Plaintiff on February 10, 2023; and that Defendant Myers should not have marked the referral non-urgent. Although Defendant Myers marked the referral to the orthopedist as non-urgent, an urgent referral would have only sped up the authorization process, not the appointment scheduling process. Plaintiff's injury was also a common volar plate avulsion fracture that required standard treatment with splinting, rest and pain medication. Therefore, Plaintiff's assertions are insufficient to permit a reasonable jury to find deliberate indifference. *See, e.g.*, *Snipes*, 95 F.3d at 592. (stating that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim.").

Further, Plaintiff admitted he did not know if Defendant Myers saw his grievance or heard about his complaints. He also did not know if Defendant Myers was told about his worsening symptoms or if Defendant Myers knew about the appointment delay. Additionally, Plaintiff stated he did not know why the appointment was delayed, and he did not know who was responsible for the delayed appointment.

Lastly, Dr. Calfee, an orthopedist at Wash U, examined Plaintiff on April 26, 2023, and determined his finger was stable, well-aligned and did not require surgery or additional monitoring. Moreover, Plaintiff testified that he did not know whether earlier treatment would have changed the outcome. He also does not know whether stiffness for months is unusual and how long such injuries take to heal. No evidence indicates that Plaintiff's pain and suffering were exacerbated because of the appointment delay. Nothing before the Court suggests that an earlier appointment with the orthopedic surgeon would have decreased or alleviated Plaintiff's alleged pain. Thus, Plaintiff cannot establish harm from the delayed appointment.

Even construing the evidence in the light most favorable to Plaintiff, the Court finds that no reasonable jury could conclude that Defendant Myers was deliberately indifferent to Plaintiff's serious medical needs regarding his broken finger. Thus, the Court finds that Defendant Myers is entitled to summary judgment.

**B. Defendants Crow and Brown**

Lastly, the Court addresses Plaintiff's claims against Defendants Crow and Brown. As to Defendant Crow, Plaintiff concedes he does not have a claim against her. (Doc. 87, p. 33). Thus, the Court grants summary judgment in Defendant Crow's favor.

As to Defendant Brown, Defendant Brown argues she lacks the personal involvement to be liable for Plaintiff's claims. Plaintiff counters that Defendant Brown was responsible for scheduling his orthopedic appointment and her failure to do so constitutes deliberate indifference. The Court agrees with Defendant Brown.

The Court, construing the record in the light most favorable to Plaintiff as it must, concludes it does not contain evidence that Defendant Brown was subjectively aware of Plaintiff's serious medical needs and ignored them. The evidence reveals Defendant Brown was not personally involved in the delay of his medical treatment. She is the Healthcare Unit Administrator, not a treating nurse; she does not schedule outside appointments; and she never spoke to Plaintiff. It appears her only involvement was responding to Plaintiff's grievance by checking with the schedulers and confirming that the appointment was set.

Moreover, the evidence does not reveal that Defendant Brown had subjective knowledge of a substantial risk. Plaintiff's own testimony shows that he does not know why the appointment was delayed; he does not know whether Defendant Brown received his kite; and he does not know whether Defendant Brown was aware of any worsening of his symptoms.

Moreover, Plaintiff's inability to connect Defendant Brown to the appointment process or to produce evidence of Defendant Defendant's Brown personal participation is fatal to his claim. Plaintiff speculates that "Health Care Administrators and Medical Directors are responsible for scheduling outside specialist treatment." (Doc. 87, p. 30). Then later in his brief, Plaintiff states that specialty medical referrals are handled by "health care staff and medical directors." *Id*. at p. 21. The Health Care Administrator and health care staff are not one and the same. His speculation/belief does not create a material fact. Unsupported speculation cannot defeat summary judgment. A Plaintiff seeking to defeat summary judgment must comply with Federal Rule of Civil Procedure

56 and Federal Rule of Evidence 602. Both Federal Rule of Civil Procedure 56(c)(4)and Rule of Evidence 602 requires that testimony be based on personal knowledge. Personal knowledge can include reasonable inferences, but it does not include speculating as to someone else's state of mind, or other intuitions, hunches, or rumors. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003).

Lastly, as stated *supra*, Dr. Calfee, in April 2023, found normal alignment, stable healing, and no need for surgery. Dr. Calfee also noted no follow-up was necessary and stiffness was normal. In fact, Plaintiff admitted he did not know if earlier treatment would have changed the outcome, whether the delay worsened the injury, or whether stiffness was unusual. Thus, Plaintiff cannot show any harm caused by the delay in treatment.

Mostly, the evidence demonstrates that Defendant Brown was aware of Plaintiff's issue through Plaintiff's grievance and that she inquired with healthcare staff about the status of the outside appointment wherein she was told it was scheduled. The Court finds that Plaintiff has not presented evidence from which a reasonable jury could conclude that Defendant Brown was deliberately indifferent to his serious medical needs or turned a blind eye towards Plaintiff's medical situation. Thus, Defendant Brown is entitled to summary judgment.[3]

---

[3] As the Court finds that Defendant Brown is entitled to summary judgment, the Court need not address the issue of qualified immunity.

## CONCLUSION

Accordingly, the Court **GRANTS** the motions for summary judgment (Doc. 71, 80). The Court **FINDS** in favor of Defendants Percy Myers, Christel Crow and Christine Brown and against Plaintiff Clifford Baker. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case.

**IT IS SO ORDERED**.

**DATED: August 31, 2026.**

Gilbert C. Sison

Digitally signed by Judge Sison
Date: 2026.08.31 11:40:59 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**